Moelis & Co. LLC v Ocwen Fin. Corp. (2022 NY Slip Op 01422)





Moelis & Co. LLC v Ocwen Fin. Corp.


2022 NY Slip Op 01422


Decided on March 08, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 08, 2022

Before: Acosta, P.J., Renwick, Webber, Kern, Friedman, JJ. 


Index No. 655946/18 Appeal No. 15469-15469A Case No. 2021-02171, 2021-02807 

[*1]Moelis & Company LLC, Plaintiff-Respondent,
v
Ocwen Financial Corporation, Defendant-Appellant.


Goodwin Procter LLP, Washington, DC (William M. Jay, of the Bar of the District of Columbia, admitted pro hac vice of counsel), for appellant.
Arkin Solbakken LLP, New York (Deana Davidian of counsel), for respondent.



Judgment, Supreme Court, New York County (Andrea Masley, J.), entered July 21, 2021, in favor of plaintiff and against defendant in the amount of $3,210,060.49 plus interest, and bringing up for review an order, same court and Justice, entered June 4, 2021, which, to the extent appealed from as limited by the briefs, granted plaintiff's motion to the extent of awarding plaintiff summary judgment on its first, second, and third causes of action for breach of contract and dismissing defendant's counterclaims for breach of contract and unjust enrichment, and denied defendant's motion for summary judgment dismissing the first cause of action, unanimously affirmed, with costs. Appeal from aforesaid order, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
This is a dispute between investment bank plaintiff Moelis & Company LLC (Moelis) and mortgage servicer/subservicer defendant Ocwen Financial Corporation (Ocwen) over an approximate $2.34 million Sale Transaction Fee, reimbursement of out-of-pocket expenses of $22,438.28, and attorneys' fees.
Moelis made a prima facie showing of entitlement to judgment as a matter of law with respect to the Sale Transaction Fee, out-of-pocket expenses, and attorney's fees. Prior to 2012, Ocwen was the servicer and owner of certain mortgage servicing rights. In 2012 and 2013, Ocwen sold its ownership rights to nonparty HLSS Holdings, LLC (HLSS). In doing so, the transaction required third-party consents so HLSS was considered the beneficial owner of the mortgage servicing rights and Ocwen retained legal title pending receipt of the consents. Upon receipt of each consent, Ocwen transferred legal title over to HLSS. Simultaneous to this sale of ownership rights, Ocwen and HLSS entered into another agreement whereby Ocwen would serve as a subservicer and perform all of the servicing duties in exchange for a substantial fee.
In January 2015, Ocwen retained Moelis through a Letter Agreement to act as a nonexclusive financial advisor, capital markets advisor, and investment banker in connection with Ocwen's review of its strategic and financial options including "a Sale Transaction, Capital Transaction and/or Restructuring." The Letter Agreement provided a specific fee schedule, including monthly fees of $250,000 and clearly set forth success fees. It included an indemnification provision, and also had a "Tail Period" whereby if Ocwen terminated Moelis but then entered into a Sale Transaction, Capital Transaction and/or Restructuring within 12 months thereof, Moelis would still be entitled to the applicable success fee. It is undisputed Moelis engaged with prospective buyers on behalf of Ocwen following this engagement. On July 1, 2015, Ocwen and Moelis entered into a Supplement to the Moelis Letter. In this Supplemental Agreement, the parties agreed to terminate Moelis's engagement under the Letter Agreement, except "with respect to a potential New Residential Transaction." New Residential [*2]Investment Corp. (along with its affiliates including New Residential Mortgage) was a strategic investor and buyer that Moelis had engaged and who had made a proposal to Ocwen. Shortly thereafter, the Ocwen Board of Directors rejected all pending acquisition proposals. By letter dated August 1, 2016, Ocwen terminated Moelis's engagement as to any potential New Residential Transaction effectively immediately.
On July 23, 2017, Ocwen and New Residential entered into two sets of agreements. First, they entered into a set of agreements modifying the 2012 HLSS-Ocwen mortgage servicing ownership Agreements to reflect that HLSS had sold its ownership interests to New Residential and addressing the fee structure for Ocwen's subservicing services (2017 Disputed Sale Transaction), and second, a Capital Transaction Agreement whereby Ocwen sold New Residential 6,075,510 shares of newly issued Ocwen common stock for $13.9 million (2017 Capital Transaction). In the 2017 Disputed Sale Transaction, Ocwen agreed to reduce its on-going fee structure for its subservicing work in exchange for a lump sum payment from HLSS, representing the future fees HLSS would have owed for each mortgage servicing agreement subserviced by Ocwen which were now being transferred to New Residential, and a reduced on-going fee to be paid by New Residential.
Following those transactions, Moelis invoiced Ocwen for a "Capital Raising Fee" of $486,500 for the 2017 Capital Transaction, a "Sale Transaction Fee" of $2.52 million for the 2017 Disputed Sale Transaction, and $22,438.28 for out-of-pocket expenses. Ocwen refused to pay the Sale Transaction Fee and out-of-pocket expenses.
Supreme Court properly granted Moelis summary judgment on its claim for breach of the Letter Agreement for failure to pay the Sale Transaction Fee. The 2017 Disputed Sale Transaction documents should be considered in conjunction with one another as they were executed as part of the same transaction and all together (see Teletech Europe B.V. v Essar Servs. Mauritius, 83 AD3d 511, 512 [1st Dept 2011]). The Letter Agreement defined a "Sale Transaction" as, inter alia, "an Acquirer's acquisition of . . . specified discrete assets including . . . agency and non-agency mortgage servicing rights, . . . servicing advances, [and] mortgage backed securities." If a Sale Transaction occurred, Moelis would be entitled to a cash fee of 0.70% of the Transaction Value, i.e., the total consideration paid or any amount by which the consideration paid by the Acquirer would be reduced due to liabilities of the acquired company. Here, New Residential acquired "specified discrete assets" in the form of legal ownership of the mortgage servicing rights from Ocwen, for which there was no consideration paid, and a reduction in future liabilities owed by New Residential to Ocwen under the subservicing agreement due to HLSS paying lump sum payments totaling $334 million to offset such future liabilities. As these are "specific discrete [*3]assets" acquired by New Residential, the 2017 Disputed Sale Transaction was a Sale Transaction within the meaning in the Letter Agreement and Moelis was owed a Sale Transaction Fee. It is irrelevant Moelis did not work on the 2017 Disputed Sale Transaction because it occurred during the Tail Period and involved New Residential (see e.g. StormHarbour Sec. LP v IIG Trade Opportunities Fund, N.V., 145 AD3d 497 [1st Dept 2016]).
In addition, Moelis was entitled to summary judgment on its breach of contract claim for reasonable out-of-pocket expenses. The Letter Agreement clearly provides Ocwen will reimburse Moelis for all of its reasonable out-of-pocket expenses "as they are incurred" so long as Moelis provided "reasonable support" for those expenses at Ocwen's request. Moelis submitted its request for reimbursement of expenses totaling $22,438.28 approximately 18 months after Ocwen terminated them and upon the conclusion of the Tail Period. When requested, Moelis provided a chart identifying each expense, date incurred, and amount. Moelis acted within its contractual rights under the Letter Agreement in demanding reimbursement, and while Ocwen must pay expenses "as they are incurred," Moelis was not required to submit its invoices for such expenses "as they are incurred." As such, Moelis is entitled to its out-of-pocket expenses.
Moreover, the indemnification provision in the Letter Agreement is unambiguous and provides for Ocwen to reimburse Moelis's reasonable out-of-pocket costs and expenses (including counsel fees) for "enforcing this agreement." This clause must be taken into context, and within the same indemnification provision, there are references to the "transaction[s], whether or not consummated, contemplated by this agreement" and "fees actually received by [Moelis] in connection with this agreement." The use of "agreement" in this context can only reasonably be interpreted as referring to the entire Letter Agreement, rather than only the indemnification provision.
Finally, Supreme Court properly granted Moelis summary judgment dismissing Ocwen's counterclaims for breach of the Letter Agreement and unjust enrichment. Ocwen claims Moelis did not provide the quality of services that it needed, and demands a refund of its payment of an unrelated $8.2 million Restructuring Fee, the $486,952.12 Capital Raising Fee, and approximately $1 million in monthly fees. However, Moelis made a prima facie showing of entitlement to judgment as a matter of law on these claims, as the Letter Agreement does not have any provisions governing quality of services and the relevant monthly and success fees were earned only upon the occurrence of certain events, which in fact occurred. Moreover, section 2(c) of the Letter Agreement clearly stated that Ocwen's "obligation to pay any fee, expense or indemnity set forth herein is not subject to any reduction by way of setoff, recoupment or counterclaim."
We have considered Ocwen's remaining arguments and find [*4]them unavailing. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 8, 2022